# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2017, 10:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lacee M. Garber,[1] n/k/a Lacee M. Cochran, <br><br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br><br> *Appellee-Plaintiff.* | May 30, 2017 <br><br> Court of Appeals Case No. 34A02-1609-CR-2039 <br><br> Appeal from the Howard Superior Court. <br> The Honorable Timothy P. Spahr, Special Judge. <br> Trial Court Cause No. 34D02-1407-FC-151 |

**Sharpnack, Senior Judge**

---

[1] Because she was referred to as Lacee Garber in the pleadings and in the transcript, we refer to her by that name in the opinion.

# Statement of the Case

Lacee M. Garber appeals from the trial court's restitution order after she pleaded guilty to two counts of Class C felony forgery[2] and one count of Class D felony theft.[3] We affirm.

# Issue

The dispositive issue in this appeal is whether Garber waived review of the trial court's restitution order by agreeing to leave calculation of the amount of restitution to the trial court's discretion.

# Facts and Procedural History

Garber was employed as a paralegal and office manager in the law office of Michael Krebes from 2005 to 2013. Krebes was a deputy prosecutor, receiving a stipend from the prosecutor's office, but he also maintained a civil practice. Garber was compensated for her work in Krebes' private office from the stipend Krebes received from his work at the prosecutor's office. However, Krebes told Garber that if the civil practice could not be financially self-sustaining, he planned to close it.

---

[2] Ind. Code § 35-43-5-2(b)(1) (2014).

[3] Ind. Code § 35-43-4-2 (2014).

[4]     Krebes paid for some of his personal bills from stipend funds, and he sometimes used funds from his civil practice to pay his personal mortgage and for use as spending money.

[5]     At some point, Garber began to pay her own personal expenditures from the business and client trust accounts to which she had been granted access by Krebes. No records were kept of the amount taken from those accounts for such purpose.

[6]     Several clients retained Krebes to represent them in bankruptcy court and presented their retainer payments to Garber. Garber did not initiate the bankruptcy filings but kept the money. Garber also settled cases without Krebes' permission and kept the settlement money. Two of the clients who were deprived of their settlement checks were Delores Pendergrass and Thomas Melton.

[7]     Disciplinary complaints started to arrive at Krebes' office. Garber responded to some of them on her own and hid others in an office closet. She also instructed clients to contact her directly by her cell phone number to bypass Krebes.

[8]     The civil practice began to fail financially, and Garber kept the situation hidden from Krebes for as long as possible by moving money between accounts. By the fall of 2013, Krebes became aware that the civil practice was failing and told Garber that he planned to close it by the end of the year. By December, however, Krebes became aware of the grave and extensive nature of Garber's misconduct after speaking with several clients.

[9] Krebes was disciplined for his failure to supervise Garber and for allowing her to practice law without a license. He received a two-year license suspension, which was withheld upon completion of certain requirements. Krebes hired several other attorneys to complete his client work, was the subject of civil suits filed by clients, and spent $10,000 to defend the disciplinary actions he faced. Krebes valued his loss due to Garber's criminal actions at $123,818.45.

[10] After charges were filed against her, Garber entered into a written plea agreement, pleading guilty to two counts of Class C felony forgery for her actions involving Thomas Melton and Delores Pendergrass, and one count of Class D felony theft for stealing from Krebes. The State agreed to dismiss the remaining counts. The plea agreement set forth specific sentencing provisions, and also represented that the parties "disagree on the amount of restitution, and arguments thereon shall be made at the sentencing hearing." Appellant's App. p. 138. At the hearing during which sentencing and restitution were addressed, Garber's counsel stated, "so, we'll leave that to the Court's discretion as to how to calculate restitution and what amount that should ultimately be. Umm, but we ask to, that you please consider her ability to pay when you, when you fashion that." Tr. p. 121.

[11] The trial court ordered restitution in the amount of $100,000, with payment of $20,200 as a condition of probation and $79,800 as a civil judgment. Garber now appeals.

## Discussion and Decision

[12] Garber challenges the trial court's restitution order, contending that the amount is too high. By statute, a trial court is allowed to order a defendant to pay restitution to a victim as a condition of probation, so long as the defendant's ability to pay has been considered before the restitution order is entered. Ind. Code § 35-38-2-2.3(a)(6) (2013). "A trial court's determinations in setting probation are set aside only where the trial court has abused its discretion." *Bell v. State*, 59 N.E.3d 959, 962 (Ind. 2016). "An order of restitution lies within this discretion and will likewise be reversed only for abuse of discretion." *Id.* (quoting *Kays v. State*, 963 N.E.2d 507, 509 (Ind. 2012)).

[13] The State argues that Garber has waived this argument by stating that she would leave the issue of calculation of restitution to the trial court's discretion. We agree.

[14] In *Bell*, our Supreme Court addressed the issue of whether a defendant waived her ability to challenge a trial court's restitution order on appeal due to her failure to object to the order at the time it was entered. The Court stated as follows:

> This Court and the Court of Appeals review many claims of sentencing error (improper consideration of an aggravating circumstance, failure to consider a proper mitigating circumstance, inaccurate weighing of aggravating and mitigating circumstances, etc.) without insisting that the claim first be presented to the trial judge. Although there have been cases in which appeals on restitution were waived due to the failure to

make an objection at trial, the vast weight of the recent case law in this state indicates that appellate courts will review a trial court's restitution order even when the defendant did not object based on the rationale that a restitution order is part of the sentence, and it is the duty of the appellate courts to bring illegal sentences into compliance.

59 N.E.3d at 962 (internal citations and quotations omitted).

[15]    "Waiver is an affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak." *Ryan v. Janovsky*, 999 N.E.2d 895, 901 (Ind. Ct. App. 2013) (quoting *Pohle v. Cheatham*, 724 N.E.2d 655, 659 (Ind. Ct. App. 2000)), *trans. denied*. Here, Garber challenged the amount offered by Krebes, but did not provide the trial court with an alternative, lesser amount, and expressly left the calculation to the trial court's discretion.

[16]    Waiver notwithstanding, Garber's claim fails. Without objection, Krebes testified about and produced a document he prepared outlining his losses attributable to Garber's criminal activity. The amount he claimed was $123,818.45. In contrast, Garber testified that she did not know how much money she had stolen from Krebes. Krebes did acknowledge his use of money from his business accounts to pay his mortgage and for personal spending. He testified to the amount of the mortgage payment. Based on this testimony, the trial court reduced the amount claimed by Krebes to $100,000. We find no abuse of discretion here.

# Conclusion

[17] In light of the foregoing, we affirm the trial court's judgment.

[18] Affirmed.

Vaidik, C.J., and Najam, J., concur.